UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LYNIECE NELSON, on behalf of herself
individually and as Personal Representative of
the Estate of Henry Hilliard a.k.a. Shelly Hilliard,

       Plaintiff,

vs.

       Case No.
       Honorable
       Magistrate Judge

CITY OF MADISON HEIGHTS, acting through
its agency, the Madison Heights Police Department;
Madison Heights Police Officer CHAD WOLOWIEC,
in his individual capacity; and Madison Heights
Police Officer DAVID KOEHLER,
in his individual capacity, jointly and severally,

       Defendants.
_____/

William H. Goodman (P14173)
Julie H. Hurwitz (P344720)
Kathryn Bruner James (P71374)
Miriam R. Nemeth (P76789)
GOODMAN & HURWITZ, P.C.
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170/(313) 567-4827 fax
*Attorneys for Plaintiff*

_____/

# **COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, LYNIECE NELSON, on behalf of herself individually and as Personal Representative of the Estate of Henry Hilliard, a.k.a. Shelly Hilliard, deceased, by and through her attorneys, GOODMAN & HURWITZ, P.C., and for her Complaint against the above-named Defendants, states as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff, LYNIECE NELSON, as Personal Representative for the Estate of her deceased transgendered child, Henry Hilliard, Jr., a.k.a. Treasure Michelle ("Shelly") Moore Hilliard (hereinafter "Shelly Hilliard"), seeks relief for Defendants' violation, under color of state law, of her rights, privileges, and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of Michigan, all resulting in injury and tragic death to Shelly Hilliard.

2. On or about October 23, 2011, Shelly Hilliard was brutally murdered, dismembered, and her torso was burned by two men who learned – from Defendants – that Ms. Hilliard had assisted Madison Heights Police officers as an informant in the arrest of one of the men, Qasim Raqib, ("Red"), for dealing marijuana a few days earlier.

3. Prior to Ms. Hilliard's vicious murder, Defendant Madison Heights Police officers CHAD WOLOWIEC and DAVID KOEHLER (hereinafter "Defendant officers") affirmatively communicated to Red's associate and companion, Marquita Clark, information that clearly identified Shelly Hilliard as the person responsible for Red's arrest, which Clark quickly passed on to Red.

4. Defendant officers made these disclosures to Red through Red's associate and companion, despite knowing that doing so would significantly increase the risk, and indeed the likelihood, of serious bodily injury and/or death to Shelly Hilliard.

5. As a result of Defendant officers' actions, Shelly Hilliard was murdered by Red and his accomplice within 48 hours of the time that Red was released from custody and then learned from Defendant officers (via Ms. Clark) that Ms. Hilliard was the informant who had led to his arrest.

6. The known danger to Shelly Hilliard from Defendants' actions was exacerbated by the fact that she was never warned that her identity as an informant had been disclosed (or even that it could have been disclosed) by Defendant officers.

7. As a result, these Defendant officers both affirmatively created the danger of serious harm to Ms. Hilliard and, by not warning her, rendered her less capable of protecting herself from and/or avoiding the increased risk of harm to which they had affirmatively subjected her.

## JURISDICTION

8. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights. Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

9. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

10. Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(2), because this is the judicial district in which the events giving rise to the claim occurred.

## JURY DEMAND

11. Plaintiff demands a trial by jury in this action on each and every one of her claims.

## PARTIES

12. Plaintiff LYNIECE NELSON was the mother of Plaintiff's decedent, Henry Hilliard, a 19 year old transgendered person who at all times herein was known as Shelly (hereinafter referred to as "Shelly Hilliard" or "Shelly"). Plaintiff is the Personal Representative of the Estate of Henry "Shelly" Hilliard, Jr. As such, she is the proper party to bring this action for and on behalf of the Estate. At all relevant times herein, Ms. Nelson was a resident of the City of Detroit, Michigan, as was her daughter, Shelly.

13. Defendant CITY OF MADISON HEIGHTS (hereinafter "MADISON HEIGHTS") is a municipal corporation, so authorized under the laws of the State of Michigan, that operates the Madison Heights Police Department (hereinafter "MHPD") as a part of its responsibilities and services. At all relevant times herein, Defendant MADISON HEIGHTS acted under color of regulation, usage, custom, and law, and pursuant to its policies and practices.

14. Defendant POLICE OFFICERS CHAD WOLOWIEC and DAVID KOEHLER are, and at all times herein were, police officers of the MHPD. At all relevant times herein, Defendants WOLOWEIC and KOEHLER acted under color of regulation, usage, custom, and law, and pursuant to the policies and practices of Defendant MADISON HEIGHTS, through its Police Department.

4

## FACTS

15. On or about October 20, 2011 at approximately 12:15 a.m., Defendants KOEHLER and WOLOWIEC conducted an investigation at the "Motel 6" at 32700 Barrington Road in Madison Heights, Michigan, because Officer WOLOWIEC smelled marijuana emanating from Room 236.

16. Ms. Hilliard and her male companion were the occupants of Room 236 at that time.

17. Defendants WOLOWIEC and KOEHLER approached the room and conducted a procedure known as a "knock and talk." Shelly Hilliard, responded to the knock and hesitantly allowed Defendants WOLOWIEC and KOEHLER into the motel room. Ms. Hilliard told both Defendant officers that the room was rented by her boyfriend, not by her.

18. As Defendants WOLOWIEC and KOEHLER entered the room, they saw a man whom they identified at the time as Michael Allen Slaughter[1] sitting at a desk working on a computer and noticed two ash trays full of "marijuana roaches" at his side. After searching the rest of the room, Defendant WOLOWIEC found a small plastic baggy of marijuana taped to the inside of the toilet. Defendant KOEHLER placed Slaughter under arrest for possession of marijuana and for obstructing police officers.

19. Defendants WOLOWIEC and KOEHLER also threatened to arrest Shelly Hilliard and subject her to jail and/or prison – a notoriously dangerous place for any transgendered individual – unless she assisted Defendants by identifying the person who sold her and/or Slaughter the marijuana.

20. Defendants then demanded that Ms. Hilliard call the marijuana dealer and order a delivery of marijuana to the motel room. To avoid arrest, Ms. Hilliard agreed to do this.

---

[1] Madison Heights Police later learned that Slaughter's real name was Steven Alonzo Hood.

21. Thus, working in conjunction with and under the direction of WOLOWIEC and KOEHLER, Shelly Hilliard called Qasim Raqib ("Red"), whom she identified to Defendants as the marijuana dealer, and summoned him to the Motel 6.

22. As Red arrived at the Motel 6 to meet with Shelly Hilliard, Defendant KOEHLER, who was lying in wait for him, pulled Red's car over into a parking lot across from the motel. Red's associate and companion, Marquita Clark, was also in the car.

23. Other than the fact that Red's car had been previously identified by Ms. Hilliard, acting as a police informant, there was no apparent reason for Red's car to be pulled over by the police.

24. Defendant KOEHLER then searched Red, Red's car, and Clark, at which time he found the marijuana that Red and Clark were delivering to Shelly Hilliard.  Both Red and Clark were arrested and charged with conspiracy to deliver marijuana and possession with intent to distribute marijuana.

25. At the police station, Defendants WOLOWIEC and/or KOEHLER spoke with Clark and at that time told her that she and Red had been arrested because Defendants had "used a lady" at the Motel 6 to "set up" Red and "that he was basically set up."

26. Defendants knew at the time that they were disclosing the identity of Plaintiff's decedent Shelly Hilliard – their "confidential" informant – to a person or persons who were likely to cause her serious injury or death.

27. A few hours later, Red and Clark were released from Madison Heights Police custody.

28. Clark related to Red what Defendants WOLOWIEC and KOEHLER had told her about the "lady" who had "set [him] up," as described in Paragraph 25 above.  When Clark

6

informed Red of this, he was visibly angry at Shelly Hilliard, due to her involvement in setting him up.

29. At all times herein, Defendant Madison Heights's unwritten policies, customs, practices, and/or usages regarding the use and protection of "confidential informants" served to instruct and guide Defendant officers in their interactions with Shelly Hilliard, and were a moving force in both the improper disclosure to Red of Shelly's identity and in Shelly's subsequent death. These unwritten policies, customs, practices, and usages are set forth is more detail in Plaintiff's Second Claim for Relief, Paragraph 51, *infra*.

30. In the early morning hours of October 23, 2011, three days after Defendants WOLOWIEC and KOEHLER disclosed the information about Red's informant, Shelly, Red – acting on that information and in concert with an individual named James Matthews – cruelly and brutally murdered Shelly Hilliard.

31. In an effort to cover up their crime, they then dismembered her body, scattered the parts around the City of Detroit, and burned her torso.

32. Red and Matthews accomplished this horrific task by luring Ms. Hilliard to a house on the 900 block of Longfellow Street in Detroit, on the premise that one of the men wanted a date with her. A cab driver that Ms. Hilliard frequently used for transportation dropped her off at approximately 1:20 a.m. Ms. Hilliard was wearing a silver party dress for her date.

33. Red and Matthews were waiting for Shelly Hilliard outside of the house on Longfellow Street. She immediately became concerned when she saw the men waiting and asked her cab driver to stay on a cellphone call with her. As he drove away, the cab driver heard Shelly Hilliard say, "What are you doing?" and then scream "No!" over the phone. Her phone

7

fell out of her hand and went dead after a few muffled noises. By the time the cab driver turned around the corner to return to Shelly Hilliard's drop-off location, no one was in sight.

34. The cab driver was the last known person to see Shelly Hilliard alive, other than her murderers.

35. Red and Matthews forced Shelly Hilliard into a car and drove off. Red held a gun to Ms. Hilliard and, according to information and belief, beat her with the gun. At some point while they were in the car, one of the men may have choked Ms. Hilliard.

36. According to information and belief, the two men took Shelly Hilliard to an abandoned house on Longwood Street in Detroit and tied her up. They continued to assault her.

37. At some point during this brutal assault and due to the assault itself, Shelly Hilliard died.

38. Matthews's hands were covered with scratch marks from Shelly Hilliard's attempt to prevent her homicide, so Red and Matthews decided to cut off Ms. Hilliard's hands in order to hide the DNA evidence under her fingernails. Red and Matthews cut off Ms. Hilliard's arms and legs with an axe and placed her limbs in trash bags. They rolled Ms. Hilliard's torso into a sheet and placed it in the trunk of their car.

39. Red and Matthews then dumped Shelly Hilliard's torso in the area of Interstate 94 and Bewick Street in Detroit, Michigan. They doused her torso in gasoline, lit it on fire, and drove off.

40. Later that day, on October 23, 2011, Red and Matthews scattered Shelly Hilliard's limbs in the area of 6 Mile Road and Dakota Avenue. Based upon information and belief, they also burned down the abandoned house on Longwood Street to hide the blood that had soaked into the structure.

41. Shelly Hilliard remained missing until approximately November 9 or 10, 2011. Although police officers discovered Shelly Hilliard's burned torso later in the day on October 23, 2011, they were unable to identify her body for several weeks. They were ultimately able to do so only from on a cherry tattoo on a portion of her upper right arm that remained connected to her torso. Her limbs were not discovered until early March 2012.

42. Both Red and Matthews were arrested, convicted, and sentenced for their involvement in Shelly Hilliard's murder.

43. Plaintiff's decedent, Shelly Hilliard, suffered indescribable fear, fright, and conscious pain and suffering, all proximately caused by the knowing disclosure of her identity by Defendant officers to her killers, and all under color of law and pursuant to the customs, policies, and practices of Defendant CITY OF MADISON HEIGHTS.

44. Plaintiff and Plaintiff's decedent's heirs suffered emotional pain and distress during the time in which Shelly Hilliard was missing, upon discovering and identifying her mutilated body, and in the time since this discovery, as they have attempted to cope with the brutal and tragic loss of their loved one and the criminal cases against her murderers.

## CLAIMS

### *FIRST CLAIM FOR RELIEF*

**42 U.S.C. § 1983
SUBSTANTIVE DUE PROCESS
(STATE-CREATED DANGER)
As to ALL DEFENDANTS**

45. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 44 above, as if fully set forth herein.

46. In their actions, set forth above, Defendants MADISON HEIGHTS, WOLOWIEC, and KOEHLER knowingly and/or with deliberate indifference violated Plaintiff's decedent

9

Shelly Hilliard's clearly established and fundamental right to substantive due process with respect to personal security, bodily integrity, and life, as secured by the Fifth and Fourteenth Amendments to the United States Constitution.

47. Defendants caused these violations through the following conduct:

   a. They affirmatively undertook deliberate actions that substantially increased the risk that Plaintiff's decedent Ms. Hilliard would be exposed to the injurious conduct of a private person, *i.e.*, Red, by informing Red's associate and companion that Plaintiff's decedent had set Red up;

   b. They acted with a substantial and clearly impermissible degree of culpability when they disclosed the identity of Plaintiff's decedent to her would-be killers, without any legitimate law enforcement purpose for so doing;

   c. Defendants' actions especially and particularly endangered Plaintiff's decedent, who would foreseeably be the sole target of any retaliatory response by Red based on this information.

48. As a direct and proximate result of the actions taken by Defendants WOLOWIEC and KOEHLER, pursuant to the customs, policies, and practices of Defendant MADISON HEIGHTS, Plaintiff's decedent was unnecessarily and foreseeably exposed to the substantially increased risk of serious bodily injury and/or death by a private person, i.e., Red.

49. As a direct and proximate result of the actions taken by Defendants MADISON HEIGHTS, WOLOWIEC, and KOEHLER, Plaintiff and Plaintiff's decedent sustained the following injuries and damages:

   a. As to the estate of Henry ("Shelly") Hilliard:

      i. Physical injury as a result of being kidnapped, bound, and beaten to death at gunpoint;

      ii. Conscious physical and emotional pain, suffering, anguish, distress, and fear experienced during the kidnapping and fatal beating; and

      iii. Funeral and burial expenses.

   b. As to the survivors, as provided under the Michigan Wrongful Death Act, Mich. Comp. Laws § 600.2922, *et seq.*:

10

    i.     Loss of love;

    ii.    Emotional distress and anguish, with associated physical symptoms;

    iii.   Loss of society and companionship;

    iv.   Loss of services; and

    v.    Loss of emotional support.

## *SECOND CLAIM FOR RELIEF*

**42 U.S.C. § 1983 –** *Monell* **Claim**
**As to Defendant CITY OF MADISON HEIGHTS**

50.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 49 above as if fully set forth herein.

51.    Defendant MADISON HEIGHTS established, promulgated, and implemented the following customs, usages, practices, and/or policies:

    a.    Failing to train, supervise, and/or discipline officers in the retention and use of private citizens as police "confidential informants" where the failure to undertake such training, supervision, and discipline would be deliberately indifferent to the risk of serious bodily harm and death to such informants;

    b.    Failing to train, supervise, and/or discipline police officers as to the impropriety of using their authority and power to coerce a private citizen to involuntarily act as a police "confidential informant";

    c.    Failing to train, supervise, and/or discipline police officers to not disclose to a criminal suspect information that may endanger persons acting as police "confidential informants", especially where no valid law enforcement purpose is served by such disclosure;

    d.    Authorizing and/or condoning police officers' improper use of their power and authority to coerce and retain private citizens to act as police "confidential informants", where doing so would place those private citizens at a substantially increased risk of serious bodily harm and/or death;

    e.    Authorizing and/or condoning police officers' improper disclosures of confidential informants' identities to criminal suspects, despite the fact that such disclosures substantially increase the risk of serious bodily harm and/or death to the informants;

f. Systematically and routinely failing to warn confidential informants that criminal suspects have received information that may endanger the informants, so that the informants would be in a better position protect themselves;

g. Failing to train, supervise, and/or discipline its police officers to warn confidential informants that criminal suspects have received information that may endanger the informants, so that the informants would be in a better position protect themselves;

h. Systematically and routinely failing to protect confidential informants from criminal suspects to whom MADISON HEIGHTS police officers have provided information that may endanger the informants;

i. Failing to train, supervise, and/or discipline its police officers to protect and/or provide for the protection of confidential informants against the retaliation of suspects who have received information that may endanger the informants;

j. Hiring, retaining, failing to train, and failing to discipline and/or supervise Defendants WOLOWEIC and KOEHLER, whom Defendant MADISON HEIGHTS knew to be untrained, unsupervised, and undisciplined, based on these individual officers' histories of routinely violating the constitutional rights of private citizens and others;

k. Specifically ratifying – and therefore adopting as the policy of Defendant MADISON HEIGHTS – the actions of Defendants WOLOWEIC and KOEHLER in coercing Plaintiff's decedent to act as an informant against Red, a known dangerous drug dealer, which placed Plaintiff's decedent at a specific and particularized risk of harm from Red; and

l. Specifically ratifying – and therefore adopting as the policy of Defendant MADISON HEIGHTS – the actions of Defendants WOLOWEIC and KOEHLER in disclosing to Red through Marquita Clark that Plaintiff's decedent had acted as an informant against Red and had "set up" Red, which placed Plaintiff's decedent at a specific and particularized risk of harm from Red;

m. Specifically ratifying – and therefore adopting as the policy of Defendant MADISON HEIGHTS – Defendants' refusal and/or failure to warn Plaintiff's decedent that her identity and role in their arrest had been disclosed to Red and Marquita Clark prior to their release from police custody, which knowingly placed Plaintiff's decedent at a specific and particularized risk of harm from Red; and

n. Specifically ratifying – and therefore adopting as the policy of Defendant MADISON HEIGHTS – Defendants' refusal and/or failure to protect Plaintiff's decedent from retaliation by Red their disclosure of her role in their being "set up" and arrested, which placed Plaintiff's decedent at a specific and particularized risk of harm from Red.

52. Each of the aforementioned policies, customs, practices, and usages was instrumental and a driving force in the violations of rights sustained by Plaintiff's decedent, as set forth herein.

53. Each of the aforementioned policies, customs, practices, and usages set forth in Paragraph 52 was known by Defendant MADISON HEIGHTS to be highly likely and probable to cause violations of the constitutional rights of private citizens, in particular Plaintiff's decedent herein.

54. As a direct and proximate result of these municipal customs, policies and practices, Plaintiff, on behalf of the Estate, and Plaintiff's decedent sustained the following injuries and damages:

    a. As to the estate of Henry ("Shelly") Hilliard:

        i. Physical injury as a result of being kidnapped, bound, and beaten to death at gunpoint;

        ii. Conscious physical and emotional pain, suffering, anguish, distress, and fear experienced during the kidnapping and fatal beating; and

        iii. Funeral and burial expenses.

    b. As to the survivors, as provided under the Michigan Wrongful Death Act, Mich. Comp. Laws § 600.2922, *et seq.*:

        i. Loss of love;

        ii. Emotional distress and anguish, with associated physical symptoms;

        iii. Loss of society and companionship;

        iv. Loss of services; and

        v. Loss of emotional support.

### *THIRD CLAIM FOR RELIEF*

**WRONGFUL DEATH**
**Michigan Wrongful Death Act, Mich. Comp. Laws § 600.2922** *et seq.*
**As to ALL DEFENDANTS**

55. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 54 as if fully set forth herein.

56. Plaintiff asserts that this Court has jurisdiction to determine damages under the Michigan Wrongful Death Act, pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4), as federal law, 42 U.S.C. §§ 1983 and 1988, allows such claims to be raised as a matter of federal law and jurisdiction; as well, it has jurisdiction under 28 U.S.C. §1367(a), which provides for supplemental jurisdiction.

57. As a direct and proximate result of the death of Plaintiff's decedent, she and Plaintiff, on behalf of the Estate, sustained the following injuries and damages:

   a. As to the estate of Henry ("Shelly") Hilliard:

      i. Physical injury as a result of being kidnapped, bound, and beaten to death at gunpoint;

      ii. Conscious physical and emotional pain, suffering, anguish, distress, and fear experienced during the kidnapping and fatal beating; and

      iii. Funeral and burial expenses.

   b. As to the survivors, as provided under the Michigan Wrongful Death Act, Mich. Comp. Laws § 600.2922, *et seq.*:

      i. Loss of love;

      ii. Emotional distress and anguish, with associated physical symptoms;

      iii. Loss of society and companionship;

      iv. Loss of services; and

      v. Loss of emotional support.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands the following relief against all Defendants, jointly and severally, for the violation of her rights and her decedent's rights as set forth herein:

a. A declaration that Defendants violated the federal and state-law-based rights of Plaintiff and Plaintiff's decedent;

b. Compensatory damages for the physical and emotional injuries and pain and suffering experienced by Plaintiff's decedent and caused by Defendants' unlawful, unconstitutional, and unjustified conduct, in an amount determined by a jury to be fair, just, and reasonable and in conformity with the evidence at trial;

c. Compensatory damages for the loss of consortium, emotional suffering, loss of society and companionship, and loss of services suffered by Plaintiff's decedent's heirs, in an amount determined by a jury to be proper under common law and the Michigan Wrongful Death Act, Mich. Comp. Laws § 600.2922, *et. seq.*;

d. Punitive and exemplary damages against the individual Defendants to the extent allowable by law;

e. Attorneys' fees, as allowed, pursuant to 42 U.S.C § 1988 and Mich. Comp. Laws § 37.1606;

f. The costs, interest, and disbursements of this action; and

g. Such other and further legal and/or equitable relief as appears just and proper to the Court or the jury in its discretion.

Respectfully submitted,

**GOODMAN & HURWTIZ, P.C.**

By: */s/William H. Goodman*
William H. Goodman (P14173)
Julie H. Hurwitz (P344720)
Kathryn Bruner James (P71374)
Miriam R. Nemeth
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170/(313) 567-4827 fax
*Attorneys for Plaintiff*

Dated: February 14, 2013